1
2
3
4
5

FENNEMORE CRAIG, P.C.
Ray K. Harris (No. 007408)
2394 E. Camelback Rd., Ste 600
Phoenix, AZ  85016
Tel.:   (602) 916-5000
Email: rharris@fclaw.com

Attorneys for Plaintiff Tulsa Boxyard, LLC

6
7
8
9

### IN THE UNITED STATES DISTRICT COURT

### DISTRICT OF ARIZONA

10
11
12
13
14
15

Tulsa Boxyard, LLC, an Oklahoma
limited liability company,

                    Plaintiff,

v.

Bskker, LLC, an Arizona limited
liability company,

                    Defendant.

No.: _____

**COMPLAINT**

(Jury Trial Demanded)

16
17
18

Tulsa Boxyard, LLC ("Plaintiff") alleges:

19

### THE PARTIES

20
21

1.      Plaintiff is a limited liability company, having a principal place of business
in Tulsa, Oklahoma.

22
23

2.      Plaintiff owns the federally registered trademark **BOXYARD** (U.S.Reg.
No 5,307,445) for leasing of real estate and real estate management services. See Table 1.

24
25
26

Table 1.

| Registered Mark | Registration No. | Registration Date | Description of Services | First Use in Commerce |
|---|---|---|---|---|
| **BOXYARD** | 5,307,445 | October 10, 2017 | Leasing of real estate; real estate management services; shopping center services, namely, rental of shopping center space. | June 10, 2015 |

A copy of Plaintiff's registration certificate for **BOXYARD®** is attached as *Exhibit A*.

3.      Plaintiff owns the common law **BOXYARD** marks and logo (the "**Common Law Marks**") shown in Table 2.

Table 2.

| Common Law Marks |
|---|
| **BOXYARD** |
|  |
| **Tulsa Boxyard** |
| **Boxyard RTP** |

4.      Defendant, BSKKER, LLC ("**Defendant**"), is an Arizona limited liability company, having a principal place of business at 4202 E Waverly Street, Tucson, Arizona 85712.

5.      Defendant, without Plaintiff's authorization, provides real estate management services and rents shopping center space in Tucson under the name "Boxyard" ("**Infringing Mark**").

6.      Defendant has trademark applications that have been allowed but not yet registered for:

THE BOXYARD for "beer, fruit beverages, wine, spirits" and "entertainment services" (US Trademark App. No. 87/187,025). *Exhibit B* attached; and

1    BOXYARD for "bar services" (US Trademark App. No. 88/359,831) *Exhibit C*

2    attached.

3                              **JURISDICTION & VENUE**

4        7.    This action arises Sections 32 and 43(a) and (d) of the Lanham Act. 15

5    U.S.C. §§1114 and 1125(a) and (d). This Court therefore has jurisdiction over the subject

6    matter of this action. 15 U.S.C. §1121, and 28 U.S.C. §§1331 and 1338.  This Court also

7    has subject matter jurisdiction over Plaintiff's related state law claims pursuant to 28

8    U.S.C. §§1338 and 1367.

9        8.    Defendant resides in this District and the actions giving rise to this lawsuit

10   have occurred in this District. Venue is proper in this District. 28 U.S.C. §1391(b).

11                            **FACTUAL BACKGROUND**

12            A.  Plaintiff's Trademark Use at its Commercial Facilities

13       9.    **BOXYARD® at Tulsa, Oklahoma**. Plaintiff is a nationwide developer of

14   commercial real estate and shopping center services, utilizing re-purposed, industrial

15   metal shipping containers to provide leasable commercial space for third party vendors,

16   such as, for example, restaurants, retail and service vendors. Since 2015, Plaintiff has been

17   using its mark BOXYARD® and its Common Law Marks in connection with its

18   commercial real estate and shopping center services. Below is a current photograph of

19   Plaintiff's commercial retail center development in Tulsa, Oklahoma.

20

21

22

23

24

25

26

1
2
3
4
5
6
7
8
9
10
11



**502 E. 3rd Street, Tulsa, Oklahoma**
*Available at* http://www.tulsaboxyard.com/contact-1

12        10.      **BOXYARD® at Research Triangle Park, North Carolina**. In addition,

13   Plaintiff is working and collaborating with third parties in North Carolina to develop and

14   offer its real estate and shopping center services under its BOXYARD® name and logo.

15   This development will be located at Research Triangle Park ("**RTP**"), one of the largest

16   and most widely recognized research and development locations in the United States. At

17   the North Carolina location, Plaintiff's real estate and shopping center services will

18   provide commercial space utilizing repurposed shipping containers, as similarly provided

19   in Tulsa, Oklahoma. Plaintiff's "unique shipping container complex will feature food,

20   retail, events and services." RTP press release, *Exhibit D* attached. In the image provided

21   below, dated February 11, 2019, Plaintiff is actively marketing its shipping container

22   development under the name BOXYARD® which is scheduled to open at RTP in 2020.

23
24
25
26

1
2
3
4
5
6
7
8
9
10
11
12
13



**Under development at Research Triangle Park, North Carolina**
Available at https://www.facebook.com/TheRTP/photos

14          A.      Defendant's Infringing Use of BOXYARD® at its Commercial Facilities.

15          11.     **Defendant Uses Plaintiff's BOXYARD® Mark in Tucson, Arizona**.

16   Defendant began using the term "BOXYARD" *after* Plaintiff acquired its intellectual

17   property rights under the BOXYARD marks. Nevertheless, Defendant marketed,

18   developed, commercialized and otherwise promoted its "BOXYARD" commercial real

19   estate development, which is located at 238 N. 4th Avenue, Tucson, Arizona. Defendant

20   continues to operate and promote this development under Plaintiff's BOXYARD® mark.

21   Photos of Defendant's infringing use of Plaintiff's BOXYARD® mark are set forth

22   below.

23
24
25
26

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26



**238 N. 4th Avenue, Tucson, Arizona**
Available at http://imglogy.com/user/theboxyardtucson.



**238 N. 4th Avenue, Tucson, Arizona**
Available at https://www.facebook.com/BoxyardTucson.

12.    **Defendant Uses Plaintiff's BOXYARD® Mark for the Same Goods and**

**Services as Plaintiff.** As early as July 15, 2015, Defendant described its prospective business as "offering an outdoor social gathering area the provides space for local food vendors to promote their unique offerings."[1] As further described in Defendant's Submittal, Defendant's commercial real estate business model provides that "[t]here will be long term leases available, as well as rotating and short term space available."[2] As recently as March 15, 2018, in a Tucson-focused website, Defendant's business model was described as providing "an outdoor plaza with four restaurant concepts and two bars that are built into re-purposed shipping containers….[Defendant] isn't ready to reveal his tenants quite yet."[3]

13.     Based on the foregoing, Defendant refers to its customers as "vendors" or "tenants." Accordingly, Defendant may be appropriately characterized as a lessor of commercial real estate space; and, more specifically, Defendant may be characterized as a lessor of commercial real estate space utilizing re-purposed shipping containers which are collectively marketed under the name "BOXYARD."

14.     Defendant provides the *same goods and services* as Plaintiff, i.e. real estate services, and which utilizes the *same type* of commercial real estate, i.e. re-purposed shipping containers, under the *same mark* which is owned by Plaintiff, i.e. BOXYARD®.

15.     Defendant's actions infringe Plaintiff's BOXYARD® mark.

B.     Plaintiff's Trademark Use Online.

16.     **Plaintiff advertises commercial space under its BOXYARD® mark on two websites and three social media accounts.** As further set forth in the subsections

---

[1] Matt Stuart, Project Manager, Page 2, Infill Incentive District & Downtown Links Subdistrict Design Package Submittal for Boxyard (Prepared for Kyle Knutson) dated July 15, 2015 ("**Defendant's Submittal**"), available at https://www.tucsonaz.gov/files/pdsd/boards-committees-commissions/IID-15-07_Design_Package.pdf. *Emphasis added.*

[2] Defendant's Submittal, Appendix 1, page 7. *Emphasis added.*

[3]     https://tucson.com/thisistucson/eat/food-halls-are-taking-tucson-by-storm-here-are-concepts/article_3d1411b2-26f3-11e8-b78d-e7ebf02d848a.html. *Emphasis added.*

below, Plaintiff markets, advertises and otherwise promotes its BOXYARD® shipping container developments on the following sites:

www.tulsaboxyard.com,

https://www.yelp.com/biz/the-boxyard-tulsa,

https://www.facebook.com/tulsaboxyard,

www.boxyard.rtp.org and

https://www.facebook.com/BoxyardRTP.

17.     **Plaintiff's Tulsa BOXYARD® Website**. On May 8, 2015 Nelson + Stowe Development Company ("**NSD**") registered the domain name "tulsaboxyard.com". WHOIS information, *Exhibit E* attached. Plaintiff, through license from NSD, operates a comprehensive website located at www.tulsaboxyard.com (the "**Tulsa Boxyard Website**") to advertise and otherwise exercise its rights to promote its real estate and shopping center services at its BOXYARD® facility. An image of Plaintiff's Tulsa Boxyard Website is provided below.



**Tulsa Boxyard Website**
Available at http://www.tulsaboxyard.com/contact-1

18.    **Plaintiff's Tulsa BOXYARD Yelp page**. In 2016, Plaintiff created, and continues to maintain and support, its Tulsa BOXYARD Yelp page, The Boxyard, which is available at https://www.yelp.com/biz/the-boxyard-tulsa.

19.    **Plaintiff's Tulsa BOXYARD Facebook page**. In 2016, Plaintiff created, and continues to maintain and support, its Tulsa Boxyard Facebook page, The Boxyard, available at https://www.facebook.com/tulsaboxyard.

20.    **Plaintiff's Research Triangle Park BOXYARD® Website**. On May 9, 1995, Research Triangle Foundation of North Carolina ("**RTF**") created the domain name "rtp.org". WHOIS information, *Exhibit F* attached. Plaintiff and RTF entered an agreement wherein Plaintiff permitted its BOXYARD® trademark to be used and displayed as a part of the rtp.org domain. Through this business arrangement, Plaintiff advertises and otherwise exercises its rights to promote its available real estate and shopping center services at its Boxyard facility under development in North Carolina which may be found at the website www.boxyard.rtp.org (the "**Boxyard RTP Website**"). As seen in the two website images below, each image displays Plaintiff's commercial retail space and the BOXYARD® mark, currently under development at Research Triangle Park, North Carolina. This development is expected to open in Spring 2020.

FENNEMORE CRAIG, P.C.

PHOENIX



**Boxyard RTP Website**

**Research Triangle Park, North Carolina**

| Available at https://boxyard.rtp.org/why-boxyard/ | Available at https://boxyard.rtp.org/ |
|---|---|

21.     **Plaintiff's BOXYARD RTP Facebook page**. In 2019, Plaintiff created, and continues to maintain and support, its North Carolina Boxyard Facebook page, Boxyard RTP, available at https://www.facebook.com/BoxyardRTP.

C.  Defendant's Trademark Infringement Online.

22.     **Defendant advertises commercial space using Plaintiff's BOXYARD® mark on Defendant's website and two social media accounts.** Defendant markets, advertises and otherwise promotes its shipping container developments using Plaintiff's

1    BOXYARD® mark on the following sites:

2        www.theboxyardtucson.com,

3        https://www.facebook.com/BoxyardTucson and

4        https://www.yelp.com/biz/boxyard-tucson?sort_by=date_asc.

5        23.    **Defendant's Website Infringement of BOXYARD®**. Defendant began

6    using the term "BOXYARD" *after* Plaintiff acquired its intellectual property rights under

7    the    BOXYARD    marks.    On    January    24,    2019,    Defendant    created

8    www.theboxyardtucson.com (Defendant's Boxyard Domain) to market, commercialize

9    and   otherwise   promote   its   "BOXYARD"   commercial   real   estate   space   utilizing

10   repurposed   shipping   containers,   located   at   238   N.   4th   Avenue,   Tucson,   Arizona.

11   Registration    documentation,    *Exhibit   G*    attached.    Infringing    use    of   Plaintiff's

12   BOXYARD®    mark    is    clearly    identifiable    on    the    Defendant's    Boxyard    Domain

13   homepage.

14



15

16

17

18

19

20

21

22

23

24

25

26

Fennemore Craig, P.C.

Phoenix

24. **Defendant's Facebook Infringement of BOXYARD®**. On July 15, 2015, Defendant created and maintained a Facebook page entitled "Boxyard on 4th". On January 31, 2019, Defendant changed the name of its Facebook page to "The Boxyard Tucson" available at https://www.facebook.com/BoxyardTucson. Defendant continues to maintain and support its Facebook page which, in turn, continues to market, commercialize and otherwise promote Defendant's commercial real estate space utilizing repurposed shipping containers under Plaintiff's BOXYARD® mark.

25. **Defendant's Yelp Infringement of BOXYARD®**. In 2019, Defendant created a Yelp page entitled "BOXYARD" available at https://www.yelp.com/biz/boxyard-tucson?sort_by=date_asc.   Defendant continues to maintain and support its Yelp page which, in turn, continues to market, commercialize and otherwise promote Defendant's commercial real estate space utilizing repurposed shipping containers under Plaintiff's BOXYARD® mark.

26. **Defendant's Online Presence Uses Plaintiff's BOXYARD® Mark for the Same Goods and Services as Plaintiff.**  Defendant advertises, markets and otherwise promotes its commercial real estate space, utilizing re-purposed shipping containers, which is collectively marketed *online* under the name "BOXYARD."

27. Defendant offers online the *same goods and services* as Plaintiff, i.e. real estate services, which utilizes the *same type* of commercial real estate, i.e. re-purposed shipping containers, under the *same mark* which is owned by Plaintiff, i.e. BOXYARD®.

28. Defendant's online presence also uses the term "BOXYARD" in its website address and social media account addresses. Again, Defendant provides the *same goods and services* as Plaintiff, i.e. real estate services, and which utilizes the *same type* of commercial real estate, i.e. re-purposed shipping containers, under the *same mark* which is owned by Plaintiff, i.e. BOXYARD®.

29. Defendant's online actions infringe Plaintiff's BOXYARD® mark.

C. Actual Knowledge and Intentional Infringement by Defendant Began in 2017.

30. **Defendant Attempted to Trademark "The Boxyard" but was *Twice* Rejected by the USPTO for being "Confusingly Similar" to Plaintiff's Mark.** On September 28, 2016, Defendant, in a sworn statement to United States Patent and Trademark Office ("**USPTO**"), filed an "intent to use" trademark application for THE BOXYARD for services including *inter alia*:

> "[l]easing of portable metal and portable non-metal buildings for use as restaurant/commercial kitchen; Leasing of portable modular metal and modular non-metal structures for use as restaurant/commercial kitchen; Restaurant and café services; Outside catering services; Restaurant and catering services."[4]
>
> (emphasis added)

Defendant sought to trademark its business of leasing portable metal structures (i.e. shipping containers) under THE BOXYARD.

31. On January 5, 2017 and February 6, 2018, during the course of Defendant's trademark prosecution, the USPTO cited[5] *Plaintiff's* BOXYARD® mark against Defendant due to a "likelihood of confusion" and an "adverse commercial impact" to the owner of the registered mark, i.e. Plaintiff:

> "In the present case, applicant's [i.e. Defendant's] mark is THE BOXYARD and registrants' [i.e. Plaintiff's] marks are BOXYARD. These marks are identical in appearance, sound, and meaning, "and have the potential to be used . . . in exactly the same manner." *In re i.am.symbolic, llc*, 116 USPQ2d 1406, 1411 (TTAB 2015), *aff'd*, 866 F.3d 1315, 123 USPQ2d 1744 (Fed. Cir. 2017). Additionally, because they are identical, these marks are likely to engender the same connotation and

---

[4] U.S. Application No. 87/187,025, filed September 28, 2016.

[5] U.S. Application No. 87/187,025, Office Actions dated January 5, 2017 and February 6, 2018. Available at http://tsdr.uspto.gov/documentviewer?caseId=sn87187025&docId=SUL20170105135801#docIndex=11&page=1 and http://tsdr.uspto.gov/documentviewer?caseId=sn87187025&docId=SUL20170105135801#docIndex=9&page=1,.

overall commercial impression when considered in connection with applicant's and registrant's respective goods and/or services. *Id.*

Therefore, the marks are confusingly similar."

Accordingly, the USPTO twice provided notice of Plaintiff's BOXYARD® mark to Defendant as early as January 5, 2017.

32.    On January 29, 2019, Defendant received actual knowledge of Plaintiff's rights for *a third time*, when Defendant received Plaintiff's written demand to "cease and desist all advertising, distribution, sales, or offers for sale which contain Plaintiff's BOXYARD® mark and remove them from any signage, brochures, websites, e-mails or other advertising containing these designations."

33.    On March 27, 2019, with actual knowledge of Plaintiffs registered BOXYARD® mark, Defendant applied for registration of BOXYARD for "bar services" . US Trademark App. No. 88/359,831, *Exhibit C* attached Defendant's application for BOXYARD claims first use in commerce on January 17, 2019, over three years after Plaintiff's first use of the registered BOXYARD® mark.

34.    Defendant's statement of use claims first use in commerce of THE BOXYARD on Jan. 17, 2019.[6] On information and belief, Defendants "The Boxyard on Fourth Ave." opened May 4-5 2019. *Id.*

35.    In spite of notice of Plaintiff's rights, Defendant continues to use Plaintiff's BOXYARD® mark as alleged herein.

36.    **With Actual Knowledge, Defendant Continues to Use Plaintiff's Mark for the Same Goods and Services**. The USPTO *twice* rejected Defendant's application because use of THE BOXYARD would "cause buyer confusion as to the source of the goods and/or services" and "adversely impact" Plaintiff's BOXYARD® mark.

---

[6] U.S. Application No. 87/187,025, Statement of Use. Available at
http://tsdr.uspto.gov/documentviewer?caseId=sn87187025&docId=SOU20190709180039#docIndex=0&page=1

37.     Defendant opted to narrow the goods and services to be provided under the THE BOXYARD (and to apply for BOXYARD limited to bar services) in order to obtain a trademark registration. But Defendant *continues to use* the marks for all the same goods in the original application *with knowledge* that Plaintiff owns the federally registered BOXYARD® mark and that the goods and services Defendant actually offers will cause consumer confusion and adversely commercially impacts Plaintiff.

38.     **Defendant's Usage of Plaintiff's BOXYARD® Mark Constitutes Intentional Infringement as of January 5, 2017**. Defendant, having actual knowledge of Plaintiff's rights, continues to use and operate its business of leasing repurposed shipping containers under the  BOXYARD mark. Accordingly, as of January 5, 2017, Defendant's activities constitute intentional infringement of Plaintiff's BOXYARD® mark.

D. Additional Averments

39.     Plaintiff's use of its BOXYARD® mark and its Common Law Marks, including the marks as embodied in its websites and social media accounts ("**Online Presence**"), are synonymous with Plaintiff's commercial activities providing, marketing, and making available commercial real estate and shopping center services utilizing repurposed shipping containers as commercial space for restaurant and retail vendors.

40.     Plaintiff's BOXYARD® mark, the Common Law Marks and its Online Presence have come to signify the quality and reputation of Plaintiff's services as a national brand.

41.     Plaintiff's BOXYARD® mark, the Common Law Marks and its Online Presence are recognized by consumers as indicating the source of Plaintiff's goods and services.

42.     Plaintiff markets, advertises and provides its real estate and shopping center services under the designation BOXYARD®, the Common Law Marks and its Online Presence.

43.    The difference between the Online Presence of Plaintiff and Defendant are *di minimis*:

| Plaintiff's Online Presence | Defendant's Online Presence |
|---|---|
| www.tulsaboxyard.com | www.theboxyardtucson.com |
| www.yelp.com/biz/the-boxyard-tulsa | www.yelp.com/biz/boxyard-tucson |
| www.facebook.com/tulsaboxyard | www.facebook.com/BoxyardTucson |
| www.boxyard.rtp.org | |
| www.facebook.com/BoxyardRTP | |

44.    Defendant's use of Plaintiff's BOXYARD® mark is a prominent part of Defendant's advertising and promotion of its services, and the infringing marks are also displayed on Defendant's website and social media accounts.

45.    The services provided, offered for sale, and sold by Defendant are not authorized by Plaintiff, nor does Plaintiff consent to, sponsor, endorse, or approve of Defendant's use of Plaintiff's BOXYARD® mark or the Common Law Marks or Plaintiff's Online Presence.

46.    Defendant's use of Plaintiff's BOXYARD® mark, the Common Law Marks, and  Online Presence, are all likely to confuse, mislead, and deceive the public as to the origin of the Defendant's goods and services, or potentially cause the consuming public to believe that the services have been sponsored, approved, authorized, or licensed by Plaintiff, and/or that Defendant is in some way affiliated or connected with Plaintiff.

47.    Plaintiff has no affiliation with Defendant and, therefore, no control over the nature and quality of Defendant's goods or services. Accordingly, and consistent with the position initially taken by the USPTO, consumers are likely to be confused and/or deceived regarding the source of Defendant's services. The invaluable brand equity, goodwill, and reputation of Plaintiff and its marks will be directly diminished and diluted by association with Defendant's commercial facilities, its products and services and its

1    Online Presence.

2        48.    Defendant's unauthorized and improper adoption and use of the terms

3    "BOXYARD" and "THE BOXYARD" (as well as registration of Defendant's Boxyard

4    Domain and embodiment in its Online Presence) to identify its commercial retail space

5    overlaps entirely with Plaintiff's valuable and well-established trademark rights in the

6    BOXYARD® mark, its Common Law Marks and its Online Presence. As alleged herein,

7    both Plaintiff and Defendant offer similar shipping container commercial real estate space

8    and related services to the same type of customer base.   In addition, both Plaintiff and

9    Defendant use the same advertising channels.

10        49.    Due to Defendant's willful infringement and refusal to cease and desist

11    using Plaintiff's trademarks, Plaintiff has suffered, and will continue to suffer, irreparable

12    harm resulting from Defendant's actions, unless Defendant is enjoined by this Court from

13    continuing those infringing acts.

14                              **COUNT I**

15                    **Federal Trademark Infringement**

16                        **15 U.S.C. §1114-1117**

17        50.    Plaintiff incorporates the allegations and averments of paragraphs 1 through

18    49 above as though fully set forth in this paragraph.

19        51.    Plaintiff has prior use of the BOXYARD® mark for leasing of real estate

20    and real estate management services.

21        52.    Based on Plaintiff's 2015 registration plaintiff has constructive use of the

22    BOXYARD® mark throughout the United States.

23        53.    Defendant has infringed (and continues to infringe) Plaintiff's intellectual

24    property rights in the BOXYARD® mark and Common Law Marks by marketing,

25    developing, commercializing and otherwise promoting its commercial real estate

26    development under the term "BOXYARD" and through Defendant's use of the term

BOXYARD in its Online Presence, including without limitation www.theboxyardtucson.com.

54.    Plaintiff has requested that Defendant cease and desist its acts of trademark infringement. The USPTO provided Defendant actual notice of Plaintiff's rights as far back as January 5, 2017). Defendant willfully refused to cease its infringing acts. As a direct and proximate result of Defendant's willful and deliberate conduct, Plaintiff has suffered, and will continue to suffer, substantial injuries, loss, and damage to its business and goodwill in an amount to be proved at trial.

55.    Defendant's acts of trademark infringement are willful and this is an exceptional case.

56.    If Defendant is permitted to continue its willful and deliberate acts of infringement, Plaintiff will be irreparably harmed both within the United States and worldwide. Monetary damages alone cannot compensate Plaintiff for the harm that Defendant will cause to it.  Plaintiff is entitled to injunctive relief prohibiting Defendant from using confusingly similar marks in connection with its products and services.

**COUNT II**

**<u>Federal Unfair Competition and False Designation of Origin</u>**

**15 U.S.C. §1125(a)**

57.    Plaintiff incorporates the allegations and averments of paragraphs 1 through 56 above as though fully set forth in this paragraph.

58.    Defendant has knowingly and intentionally used the term BOXYARD on its website, marketing, advertising, signage, social media accounts, and related items in interstate commerce for purposes of marketing, developing, commercializing and otherwise promoting its commercial real estate space under the term "BOXYARD".

59 .    Defendant's use of the term BOXYARD at its commercial facilities and as embodied in its website (www.theboxyardtucson.com) and social media accounts suggests

to relevant prospective and/or actual tenants, seeking to lease commercial real estate space in repurposed shipping containers, that Defendant's services and/or products are affiliated with, sponsored by or related to Plaintiff, and/or otherwise suggests that there is some relationship between Defendant and Plaintiff.

60.    Alternatively Defendant's use of the term BOXYARD at its commercial facilities and as embodied in its website (www.theboxyardtucson.com) and social media accounts suggests to relevant prospective and/or actual tenants, seeking to lease commercial real estate space in repurposed shipping containers, that there is some form of endorsement, license, and/or permission granted to Defendant by Plaintiff regarding the use of BOXYARD.

61.    Defendant's use of Plaintiff's BOXYARD® mark, the Common Law Marks and the term "BOXYARD" as embodied in its Online Presence is likely to cause confusion or mistake, or is likely to deceive as to the origin or sponsorship of Defendant's services or commercial activities in violation of 15 U.S.C. §1125(a).  Defendant has used and continues to use, in relation to commercial activities, a false designation or origin, or a false or misleading description which is likely to cause confusion, and to cause mistake, and to deceive, as to the affiliation, connection, or association of Defendant with Plaintiff.

62.    As a direct and proximate result of Defendant's willful and deliberate conduct, Plaintiff has suffered, and will continue to suffer, substantial injuries, loss, and damage to its business and goodwill in an amount to be proven at trial.

63.    Upon information and belief, Defendant's acts of unfair competition are willful and this is an exceptional case.

64.    If Defendant is permitted to continue its willful and deliberate acts of unfair competition and false designation of origin, Plaintiff will be irreparably harmed. Monetary damages alone cannot compensate Plaintiff for the harm that Defendant will have caused to Plaintiff.   Plaintiff is entitled to injunctive relief prohibiting Defendant from using

confusingly similar marks in connection with its products and services.

**COUNT III**

**False Advertising**

**15 U.S.C. §1125(a)**

65.    Plaintiff incorporates the allegations and averments of paragraphs 1 through 64 above as though fully set forth in this paragraph.

66.    Defendant uses "BOXYARD" and www.theboxyardtucson.com in connection with, and in commercial advertising or promotion of, its commercial real estate development services.

67.    Defendant's actions constitute false advertisement that misrepresents the nature, characteristics, qualities, and origin of Defendant's real estate services and/or deceives or has a tendency to deceive a substantial segment of potential or actual lessees into believing that Defendant's real estate services have the nature, characteristics, qualities, and/or geographical origin of Plaintiff's BOXYARD® real estate services.

68.    Defendant's deception is likely to influence a customer's purchasing decision about Plaintiff's and Defendant's services. Defendant's use of Plaintiff's BOXYARD® mark is also likely to lessen the goodwill associated with Plaintiff's services by associating Plaintiff's services with any inferior qualities of Defendant's services.

69.    Defendant's wrongful activities have caused, and continue to cause, irreparable injury to Plaintiff. As a direct and proximate result of Defendant's willful and deliberate conduct, Plaintiff has suffered, and will continue to suffer, substantial injuries, loss, and damage to its business and goodwill in an amount to be proven at trial.

70.    Upon information and belief, Defendant's acts are willful and this is an exceptional case.

71.    If Defendant is permitted to continue its willful and deliberate acts of false

advertising, Plaintiff will be irreparably harmed both within the United States and worldwide. Monetary damages alone cannot compensate Plaintiff for the harm that Defendant will cause to it. Plaintiff is entitled to injunctive relief prohibiting Defendant from using confusingly similar marks in connection with its products and services.

**COUNT IV**

**Violation of Anti-Cybersquatting Consumer Protection Act**

**15 U.S.C. §1125(d)**

72.     Plaintiff incorporates the allegations and averments of paragraphs 1 through 49 above as though fully set forth in this paragraph.

73.     Plaintiff's BOXYARD® mark was distinctive and registered with the USPTO at the time Defendant sought to register the domain www.theboxyardtucson.com.

74.     Defendant has had, and continues to have, the bad faith intent to profit from Plaintiff's BOXYARD® mark, which is protected as a distinctive mark under the Lanham Act. Upon information and belief, Defendants registered the domain name www.theboxyardtucson.com with actual knowledge of Plaintiff's rights in the BOXYARD® mark. Defendant chose to register the domain name without permission or consent of Plaintiff, with the bad faith intent to profit therefrom.

75.     Defendant's registration and use of the domain name www.theboxyardtucson.com violates the Federal Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. §1125(d).

76.     Accordingly, Plaintiff is entitled to a permanent injunction enjoining Defendant from any use of the domain name www.theboxyardtucson.com or other names confusing similar to the BOXYARD mark under 15 U.S.C. §1116(a).

77.     Plaintiff is entitled to statutory damages in the amount of $100,000.00 under 15 U.S.C. §1117(a),(d) or, in the alternative, actual damages, under 15 USC 1117

78.     Plaintiff is entitled to prejudgment interest, costs, and attorneys' fees 15 USC 1117.

## COUNT V

## State Common Law Unfair Competition

79.     Plaintiff incorporates the allegations and averments of paragraphs 1 through 49 above as though fully set forth in this paragraph.

80.     Defendant's conduct is contrary to honest practice in commercial matters. Defendant seeks to profit from the goodwill created by Plaintiff without incurring the related effort and expense.

81.     Defendant's conduct alleged in this complaint constitute unfair and competition under Arizona law.

82.     As a direct and proximate result of Defendant's willful and deliberate conduct, Plaintiff has suffered, and will continue to suffer, substantial injuries, loss, and damage to its business and goodwill in an amount to be proved at trial.

83.     If Defendant is permitted to continue its willful and deliberate acts of unfair competition, Plaintiff will be irreparably harmed because monetary damages alone cannot fully compensate Plaintiff for the harm that Defendant will cause. Plaintiff is entitled to injunctive relief prohibiting Defendant from using confusingly similar marks in connection with its products and services.

## COUNT VI

## Trademark Cancellation

### 15 U.S.C. §1119

84.     Plaintiff incorporates the allegations and averments of paragraphs 1 through 49 above as though fully set forth in this paragraph.

85.     Defendant's applications to register THE BOXYARD and BOXYARD for

the goods and services shown in *Exhibits B and C* have been allowed and are ready to proceed to registration.

86.     This court has jurisdiction to determine Defendant's right to registration.

87.     Registration should be denied to Defendant due to Plaintiffs prior actual use and registration of BOXYARD® for the same goods and services actually offered by Defendant.

## JURY TRIAL DEMAND

Pursuant to Rule 38(a) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of all issues properly triable as of right by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Tulsa Boxyard LLC prays for entry of judgment in its favor and against Defendant as follows:

a) A judgment that Defendant has infringed United States Trademark Registration No. 5,307,445 for **BOXYARD**, pursuant to 15 U.S.C. §1114;

b) A judgment that Defendant has committed acts of unfair competition, false designation of origin and false advertising under 15 U.S.C. §1125(a);

c) A judgment that Defendant has registered and used a domain name that violates Plaintiff's rights under 15 U.S.C. §1125(d);

d) A judgement cancelling any registration for THE BOXYARD or BOXYARD that has issued or has been allowed based on the Defendant's applications.

e) A permanent injunction restraining and enjoining Defendant, and all of its agents, successors and assigns, and all persons, including tenants, in active concert or participation with any of them from using **BOXYARD, [www.theboxyardtucson.com/](www.theboxyardtucson.com/)** or any other mark or domain name, alone or in combination with other words or symbols (including social media accounts), which is confusingly similar to Plaintiff's **BOXYARD**

**Mark**, the Common Law Marks, or which is likely to cause confusion or mistake, or to deceive, including any use on the Defendant's website or on the Internet;

      f)   An order requiring Defendant to deliver to Plaintiff all products, labels, marketing, promotional and other materials in its possession, custody, or control bearing **BOXYARD**, **The Boxyard Tucson**, or any other mark or name, alone or in combination with other words or symbols, which is confusingly similar to Plaintiff's **BOXYARD Mark**, or which is likely to cause confusion or mistake or to deceive;

      g)   An order requiring Defendant to file with this Court and serve upon Plaintiff within thirty (30) days after entry of the permanent injunction with a report, in writing and under oath, setting forth in detail the manner and form in which they have complied with the injunction;

      h)   An accounting and an award to Plaintiff of all profits received by Defendant to date of any kind made as a result of Defendant's infringement, unfair competition, false advertising et al, such damages to be trebled pursuant to 15 U.S.C. §1117;

      i)   That in lieu of damages described above, at Plaintiff' election prior to final judgment, Plaintiff be awarded statutory damages pursuant to 15 U.S.C. §1117(b);

      j)   An award to Plaintiff of the costs of this action and reasonable attorneys' fees; and

      k)   An award to Plaintiff of such other and further relief as the Court shall deem just.

      DATED this 9th day of August, 2019.

                        FENNEMORE CRAIG, P.C.

                        By:  *s/ Ray K. Harris*
                            Ray K. Harris
                            Attorneys for Plaintiff Tulsa
                            Boxyard, LLC